Citation Nr: 1532790 
Decision Date: 07/31/15 Archive Date: 08/05/15 

DOCKET NO. 09-23 123 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky


THE ISSUES

1. Entitlement to service connection for a right leg disability, to include as secondary to service-connected degenerative joint disease of the lumbosacral spine.

2. Entitlement to service connection for a right foot disability, to include as secondary to service-connected degenerative joint disease of the lumbosacral spine.

3. Entitlement to an initial evaluation in excess of 20 percent for degenerative joint disease of the cervical spine.

4. Entitlement to an initial evaluation in excess of 30 percent for posttraumatic stress disorder.

5. Entitlement to an initial evaluation in excess of 20 percent for radiculopathy of the right upper extremity.

6. Entitlement to an initial evaluation in excess of 20 percent for radiculopathy of the left upper extremity.

7. Entitlement to an initial evaluation in excess of 10 percent for radiculopathy of the left lower extremity.

8. Entitlement to a total disability rating based upon individual unemployability due to service-connected disability.


REPRESENTATION

Appellant represented by: Robert V. Chisholm, Attorney


ATTORNEY FOR THE BOARD

Stephen F. Sylvester, Counsel


INTRODUCTION

The Veteran served on active duty from July 1979 to July 1982, and from February to August 2003, with additional active military service in 1994. 

This case initially came before the Board of Veterans' Appeals (Board) on appeal of August 2008, May 2010, and January 2015 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky. 

Some of the issues in this case were previously before the Board in February 2012, at which time they were remanded for additional development. The case is now, once more, before the Board for appellate review.

Finally, for reasons which will become apparent, the appeal as to all issues save that of entitlement to an initial evaluation in excess of 20 percent for degenerative joint disease of the cervical spine is once again being REMANDED to the Agency of Original Jurisdiction (AOJ) for additional development. VA will notify you if further action is required on your part. 


FINDING OF FACT

The Veteran's service-connected degenerative joint disease of the cervical spine is currently productive of a limitation of flexion to no less than 25 degrees accompanied by pain, with no evidence of ankylosis of the entire cervical spine or incapacitating episodes. 


CONCLUSION OF LAW

The criteria for an initial evaluation in excess of 20 percent for degenerative joint disease of the cervical spine have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A (West 2014); 38 C.F.R. § 4.71a and Part 4, Diagnostic Codes 5242, 5243 (2014). 


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

In the case at hand, the requirements of the Veterans Claims Assistance Act of 2000 (VCAA) have been met. There is no issue as to whether the Veteran was provided an appropriate application form, or the completeness of his application. VA notified the Veteran on various occasions of the information and evidence needed to substantiate and complete his claim, to include notice of what part of that evidence was to be provided by him, and what part VA would attempt to obtain. 

VA has also fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate his claim. Currently, there is no evidence that additional records have yet to be requested, or that additional VA examinations are in order. Moreover, there is currently no error or issue which precludes the Board from addressing the merits of the Veteran's appeal. 

Finally, in reaching this determination, the Board has reviewed all the evidence in the Veteran's Virtual VA and Veterans Benefits Management System (VBMS) electronic files, to include both VA and private treatment records and examination reports. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the Veteran's claim, and what the evidence in the VBMS file shows, or fails to show, with respect to that claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000). 

Increased Rating

The Veteran in this case seeks an increased evaluation for service-connected degenerative joint disease of the cervical spine. In pertinent part, it is contended that manifestations of that disability are more severe than now evaluated, and productive of a greater degree of impairment than is reflected by the 20 percent schedular evaluation now assigned. 

In that regard, disability evaluations, in general, are intended to compensate for the average impairment of earning capacity resulting from a service-connected disability. They are primarily determined by comparing objective clinical findings with the criteria set forth in the Rating Schedule. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4 (2014). 

Where there is a question as to which of two evaluations apply, the higher evaluation will be assigned where the disability picture more nearly approximates the criteria for the next higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2014).

While the Board must consider the Veteran's medical history as required by various provisions under 38 C.F.R. Part 4, including 38 C.F.R. § 4.2 [see Schafrath v. Derwinski, 1 Vet. App. 589 (1991)], the degree of impairment resulting from a service-connected disability is a factual determination, with the Board's primary focus in such cases being upon the current severity of the service-connected disability. See Francisco v. Brown, 7 Vet. App. 55, 57-58 (1994). However, in Fenderson v. West, 12 Vet. App. 119 (1999), it was held that the Francisco rule does not apply where the appellant has expressed dissatisfaction with the assignment of an initial rating following an award of service connection for the disability in question. Rather, at the time of the initial rating, separate ratings may be assigned for separate periods of time based on the facts found, a practice known as "staged" ratings. Id., at 126. Accordingly, the analysis in this decision is undertaken with consideration of the possibility that different ratings may be warranted for different time periods. See also Hart v. Mansfield, 21Vet. App. 505 (2007).

Ratings are to be based as far as practicable upon the average impairment of earning capacity, with the additional proviso that the Secretary shall, from time to time, readjust the schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation & Pension Service, upon field station submission, is authorized to approve, on the basis of the criteria set forth in 38 C.F.R. § 3.321, an extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is a finding that the case presents such an exceptional or unusual disability picture, with such related factors as a marked interference with employment or frequent periods of hospitalization, as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2014). 

In the case at hand, in a rating decision of May 2010, the RO granted service connection (and a 20 percent evaluation) for degenerative joint disease of the cervical spine, effective from January 30, 2008, the date of receipt of the Veteran's claim for service connection. The Veteran voiced his disagreement with that assignment of benefits, and the current appeal ensued. 

Pertinent evidence of record is to the effect that, in October 2005, the Veteran underwent posterior cervical laminectomies in the area from the 3rd to the 7th cervical vertebrae, with cervical fusion at the 3rd cervical vertebra for cervical stenosis secondary to ossification of the posterior and longitudinal ligaments. 

At the time of a private evaluation in February 2008, the Veteran complained of neck pain which occurred daily, and was both constant and aching in nature. According to the Veteran, his neck pain ranged from level 4 to level 8 on a scale of 10 in intensity, and was aggravated by walking, bending, lifting, and sitting, as well as with range of motion of the neck. Relieving factors included pain medications. The Veteran denied any bowel or bladder complaints, and indicated that he had not been to a pain clinic. 

On physical examination of the neck, there was positive tenderness to palpation, as well as positive paraspinal spasm. Range of motion measurements showed flexion to 40 degrees, with extension to 20 degrees, lateral flexion to 30 degrees bilaterally, and rotation to 40 degrees bilaterally. 

On subsequent VA examination in January 2010, which examination involved a full review of the Veteran's claims folder and electronic medical records, the Veteran complained of soreness at the posterior lateral sides of his neck, as well as at the top of his shoulders "in 2003." According to the Veteran, his pain was intermittent, and attributed to the heavy gear he always carried on his back in Iraq. Moreover, he currently did very little because his arms and neck ached and he was unable to lift. 

Range of motion measurements of the cervical spine showed flexion to 25 degrees, with pain at 20 degrees; extension to 20 degrees, with pain at 15 degrees; left lateral flexion to 40 degrees, accompanied by mild discomfort; right lateral flexion to 45 degrees, with accompanying mild discomfort; and lateral rotation to both the right and left from 0 to 70 degrees, with pain at the end of the maneuver. According to the Veteran, during flareups, or following repetitive use, he was additionally limited by pain, though not weakened movement, excess fatigability, incoordination, or functional loss. Nor was there any objective evidence of painful motion, spasm, weakness, or tenderness, or any fixed deformity (i.e., ankylosis) or abnormality of the musculature of the back. 

On neurological testing, the Veteran displayed 5/5 strength throughout, and both tone and rapid alternating movements were within normal limits. Pronator drift was likewise negative, and there was no evidence of atrophy, fasciculation, or tremor. Radiographic studies of the cervical spine showed evidence of a posterior fusion from the 3rd to the 6th vertebrae, with severe degenerative disease in the apophyseal joints at the level of the 2nd and 3rd vertebrae. The pertinent diagnosis noted was moderate to severe arthritis of the cervical spine.

At the time of a more recent VA examination in November 2014, it was noted that the Veteran's claims folder and electronic medical records were available, and had been reviewed. When questioned, the Veteran described a limited range of motion of his neck, with accompanying neck pain which he described as "achiness" on both sides of his neck and shoulders. According to the Veteran, his pain was worse when holding his neck straight, or with his head tilted back for long periods of time. When questioned regarding flareups, the Veteran described flareups of increased neck pain which occurred daily, and were precipitated by neck movements, such as tilting his head backwards or sitting up straight. According to the Veteran, he alleviated his symptoms of a flareup with "rest and medication." 

Range of motion measurements of the cervical spine showed forward flexion to 35 degrees, with pain beginning at 35 degrees; extension to 40 degrees, with pain beginning at 40 degrees; right lateral flexion to 35 degrees, with no objective evidence of painful motion; left lateral flexion to 35 degrees, once again, with no objective evidence of painful motion; and right and left lateral rotation to 50 degrees, with no accompanying objective evidence of painful motion. Following repetitive use testing, there was no additional limitation in range of motion of the Veteran's cervical spine. Noted at the time of examination was that, while the Veteran did experience a localized tenderness or pain to palpation of the cervical spine, there was no evidence of any muscle spasm or guarding. Moreover, sensory examination (that is, sensation to light touch) was within normal limits. In the opinion of the examiner, it was more likely than not that pain, though not weakness, fatigability or incoordination, could significantly limit the Veteran's functional ability during flareups, or when the joints were used repeatedly over a period of time, and that there was additional limitation due to pain, but not weakness, fatigability, or incoordination, with change in the baseline range of motion due to "pain on use or during flareups." However, it would be pure speculation to state what additional range of motion loss would be present due to pain on use or due to flareups, inasmuch as the Veteran was not examined during a flareup. 

Pursuant to applicable law and regulation, the criteria for rating diseases and injuries of the spine apply with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. A 20 percent evaluation is warranted for forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees, or where the combined range of motion of the cervical spine is not greater than 170 degrees. A 20 percent evaluation is, similarly, in order where there is evidence of muscle spasm or guarding severe enough to result in an abnormal spinal contour, such as scoliosis, reversed lordosis, or abnormal kyphosis. Finally, when rating by analogy to intervertebral disc syndrome, a 20 percent evaluation is in order where there is evidence of incapacitating episodes having a total duration of at least two weeks but less than four weeks during the previous 12-month period, with an incapacitating episode being defined as a period of acute signs and symptoms due to intervertebral disc syndrome requiring bed rest prescribed by a physician and treatment by a physician. 

A 30 percent evaluation would require demonstrated evidence of forward flexion of the cervical spine to 15 degrees or less, or favorable ankylosis of the entire cervical spine. Once again, when rating by analogy to intervertebral disc syndrome, a 40 percent evaluation would require demonstrated evidence of incapacitating episodes having a total duration of at least four weeks but less than six weeks during the previous 12-month period. 38 C.F.R. § 4.71a and Part 4, Diagnostic Codes 5242, 5243 (2014). 

Based on the aforementioned, it is clear that no more than a 20 percent evaluation is in order for the Veteran's service-connected degenerative joint disease of the cervical spine. In that regard, at no time during the course of the current appeal has the Veteran showed a limitation of flexion of the cervical spine to 15 degrees. Nor is there evidence of ankylosis of the entire cervical spine. While it is true that, as a result of the Veteran's service-connected cervical spine disability, he experiences some limitation of motion with accompanying pain on movement, at no time has he experienced incapacitating episodes attributable to his service-connected cervical spine disability. Significantly, at the time of the aforementioned November 2014 VA examination, the Veteran displayed neither muscle spasm nor guarding of the cervical spine resulting in an abnormal spinal contour. 

Based on the aforementioned, the Board is of the opinion that the 20 percent evaluation currently in effect for the Veteran's service-connected degenerative joint disease of the cervical spine is appropriate, and that an increased rating is not warranted. 

In reaching this determination, the Board has given due consideration to the Veteran's potential entitlement to an extraschedular evaluation for his service-connected cervical spine disability. However, based on a review of the entire evidence of record, the Board is of the opinion that the disability picture presented by the Veteran's service-connected degenerative joint disease of the cervical spine is appropriately contemplated by the Rating Schedule. Accordingly, referral for consideration of an extraschedular evaluation is not in order. See Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

Finally, the Board notes that, under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in the case at hand, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 


ORDER

Entitlement to an initial evaluation in excess of 20 percent for degenerative joint disease of the cervical spine is denied. 


REMAND

In addition to the above, the Veteran in this case seeks entitlement to service connection for right leg and foot disabilities, as well as increased evaluations for posttraumatic stress disorder and radiculopathy of the bilateral upper and left lower extremities, in addition to a total disability rating based upon individual unemployability. However, a review of the record raises some question as to the exact nature and etiology of the Veteran's right leg and foot disabilities, the current severity of his service-connected posttraumatic stress disorder and radiculopathy, and the impact of his various service-connected disabilities on his ability to obtain and retain substantially gainful employment. 

Regarding the Veteran's claimed right leg and foot disabilities, the Board notes that, in 2008, the Veteran underwent an iliac angioplasty, which is to say, stenting of the major vein of his right leg. Moreover, in February 2008, the Veteran underwent the surgical amputation of his anterior right foot, including all of the toes of that foot. Significantly, and notwithstanding the aforementioned, at the time of the previously-referenced VA examination in November 2014, no mention whatsoever was made of the Veteran's previous right leg disability. Moreover, according to the examiner, there were "no objective findings (of) any right foot condition in the evidence of record during or since military service." Under the circumstances, the Board is of the opinion that an additional VA examination would be appropriate prior to a final adjudication of the Veteran's claims for service connection. 

Turning to the issue of increased ratings for the Veteran's service-connected posttraumatic stress disorder and radiculopathy of the bilateral upper and left lower extremities, the Board notes that the Veteran's attorney has filed the requisite Notice of Disagreement with the January 2015 rating decision awarding a 30 percent evaluation for posttraumatic stress disorder, respective 20 percent evaluations for radiculopathy of the right and left upper extremities, and a 10 percent evaluation for radiculopathy of the left lower extremity. However, the Veteran has yet to be furnished a Statement of the Case (SOC). Accordingly, further development is required prior to a final adjudication of the Veteran's claims. See Manlicon v. West, 12 Vet. App. 238 (1999).

Finally, as regards the Veteran's claim for a total disability rating based upon individual unemployability, the Board notes that, while in November 2014, the Veteran was afforded VA psychiatric and other examinations for the purpose, in part, of determining his employability, those examinations addressed the individual impact of the Veteran's disabilities on his employability, rather than the combined impact, as required by applicable law and regulation.

Based on the aforementioned, the Board is of the opinion that further development of the evidence is necessary prior to a final adjudication of the Veteran's claims. Accordingly, the case is REMANDED to the AOJ for the following actions: 

1. Any pertinent VA or other inpatient or outpatient treatment records, subsequent to November 2014, the date of the most recent VA examination of record, should be obtained and incorporated in the Veteran's VBMS electronic file. The Veteran should be requested to sign the necessary authorization for release of any private medical records to the VA. All attempts to procure such records should be documented in the file. If the AOJ cannot obtain records identified by the Veteran, a notation to that effect should be included in the VBMS electronic file. In addition, the Veteran and his attorney should be informed of any such problem. 
2. The Veteran should then be afforded additional VA examinations by appropriate specialists in order to more accurately determine the nature and etiology of his claimed right leg and foot disabilities, as well as the current severity of his service-connected posttraumatic stress disorder and radiculopathy of the bilateral upper and left lower extremities, and the impact of his various service-connected disabilities on his ability to obtain and retain substantially gainful employment. The Veteran is hereby notified that it is his responsibility to report for the examinations, and to cooperate in the development of his claims. The Veteran is further advised that the consequences for failure to report for a VA examination without good cause may include denial of his claims. 38 C.F.R. §§ 3.158, 3.655 (2014). In the event that the Veteran does not report for the aforementioned examinations, documentation should be obtained which shows that notice scheduling the examinations was sent to his last known address. It should also be indicated whether any notice sent was returned as undeliverable. 

Following completion of the aforementioned examinations, the appropriate examiner or examiners should offer an opinion as to whether the Veteran currently suffers from a chronic, clinically-identifiable disability of his right leg (not including his right foot), and, if so, whether that right leg disability, as well as the Veteran's right foot disability, at least as likely as not had their origin during, or are in some way the result of, the Veteran's periods of active military service. Should it be determined that the Veteran does, in fact, suffer from right leg and/or foot disabilities, but that such disabilities are unrelated to his period or periods of active military service, an additional opinion is requested as to whether any identified right leg and/or foot disabilities are at least as likely as not proximately due to, the result of, or aggravated by the Veteran's service-connected degenerative joint disease of the lumbosacral spine. Finally, the appropriate examiner or examiners should describe all function impairment the combined disabilities have on the Veteran's ability to work, giving consideration to his occupational experience and educational background.

A complete rationale must be provided for any opinion offered, and all information and opinions, once obtained, must be made a part of the Veteran's VBMS electronic file. In addition, the examiners must specify in their reports that the VBMS file, as well as the Veteran's Virtual VA electronic records, have been reviewed. 

3. The AOJ should then review the aforementioned reports to ensure that they are in complete compliance with this REMAND, and that the examiners have documented their consideration of all records contained in Virtual VA and the Veterans Benefits Management System, as appropriate. If the reports are deficient in any manner, the AOJ must implement corrective procedures.

4. The AOJ must then issue the Veteran a Statement of the Case (SOC) addressing the issues of increased evaluations for the Veteran's service-connected posttraumatic stress disorder, radiculopathy of the right and left upper extremities, and radiculopathy of the left lower extremity. The Veteran should be advised that, in order to complete his appeal as to these issues, a timely Substantive Appeal must be filed.

5. The AOJ should then readjudicate the Veteran's claims for service connection for right leg and foot disabilities, as well as his claim for a total disability rating based upon individual unemployability. Should the benefits sought on appeal remain denied, the Veteran and his attorney should be provided with a Supplemental Statement of the Case (SSOC) which contains notice of all relevant action taken on the claims for benefits since the issuance of the most recent SSOC in January 2015. An appropriate period of time should be allowed for response.

Thereafter, the case should be returned to the Board, if in order. The Board intimates no opinion as to the ultimate outcome in this case. The Veteran need take no action unless otherwise notified.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See The Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 707(a), (b), 117 Stat. 2651 (2003) (to be codified at 38 U.S.C. §§ 5109B, 7112).


 ______________________________________________
 MICHAEL D. LYON
 Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs